**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DONNIKA PAYNE-DILLON**                                        **CIVIL ACTION**

**VERSUS**                                                              **NO. 21-532**

**KILOLO KIJAKAZI, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                 **SECTION "B" (3)**

**REPORT AND RECOMMENDATION**

Plaintiff Donnika Payne-Dillon filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claims for a period of disability, disability insurance benefits ("DIB") and supplemental security income payments ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The matter has been fully briefed on cross-motions for summary judgment. The issues are thus ripe for review. For the following reasons, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

**I.     BACKGROUND**

On May 21, 2019, Donnika Payne-Dillon ("Plaintiff") filed a Title II application for DIB and Title XVI application for SSI, alleging disability beginning May 13, 2019, due to breast cancer status-post bilateral mastectomy, oophorectomy, implantation of breast expander, and chemotherapy; degenerative joint disease of the right knee; and degenerative changes in lumbosacral spine. (Rec. Doc. No. 10-2, p. 21). Her claim was initially denied on June 28, 2019, and again upon reconsideration on August 19, 2019. *Id*. at 18. Plaintiff requested a hearing, which was held on February 21, 2020, before an administrative law judge ("ALJ"). *Id*. The ALJ issued

1

an unfavorable decision finding that Plaintiff had not been under a disability from May 13, 2019 through April 6, 2020, the date of the decision. *Id*. at 27.

The ALJ analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4) (i)-(v). At the first step, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since May 13, 2019, her alleged onset date. (Rec. Doc. No. 10-2, p. 20). At the second step, the ALJ found the following severe impairments: breast cancer status-post bilateral mastectomy, oophorectomy, implantation of breast expander, and chemotherapy; degenerative joint disease of the right knee; and degenerative changes in lumbosacral spine *Id*. at 20-21. At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. at 21.

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except "she can occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; frequently stoop; and occasionally kneel, crouch, and crawl." (Rec. Doc. No. 10-2, p. 22).

The case was decided at step four, when the ALJ determined that Plaintiff was capable of performing past relevant work as a medical assistant, unit clerk, and pharmacy technician, as the work "does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." *Id*. at 26. Accordingly, the ALJ found that Plaintiff was not under a "disability" as defined in the Act from May 13, 2019 through April 6, 2020. *Id*. at 27.

On January 19, 2021, the Appeals Council denied Plaintiff's request to review the ALJ's decision, making the ALJ's unfavorable decision the Commissioner's final decision. (Rec. Doc.

No. 10-2, p. 2) Plaintiff filed the present action to challenge that decision pursuant to 42 U.S.C. § 405(g).

## II.    LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards are applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

Although a reviewing court must review the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues *de novo*, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive, and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). If this duty is not satisfied, the decision that results is not supported by substantial evidence. *See id*. However, the Court does

not expect procedural perfection from the ALJ and will reverse as not supported by substantial evidence only if the failure to develop the record prejudiced Plaintiff. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). In other words, the plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## III.    ENTITLEMENT TO BENEFITS UNDER THE ACT

To be entitled to social security benefits, a claimant must show that he is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). A claimant must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501-404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In evaluating a disability claim, the Commissioner utilizes the five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing pasts relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20

C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove he has a disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his initial burden, the burden shifts to the Commissioner at step five to show that the claimant can perform other gainful employment in the national economy. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). Here, the ALJ decided the claim at step four.

A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable to do not only previous work, but cannot, considering age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity" (RFC), given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995).

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). The Commissioner, rather than the courts, must resolve conflicts in the evidence. *Id*.

## IV.    ISSUES ON APPEAL

    a. Whether the ALJ erred by failing to adequately develop the record in order to determine whether Plaintiff was unable to maintain employment for a 12-month period.
    b. Whether the ALJ erred in evaluating the opinion evidence.
    c. Whether the ALJ committed reversible legal error by failing to account for all of the functional limitations stemming from Plaintiff's impairments in his RFC finding.
    d. Whether the appointment of Andrew Saul violated separation of powers and rendered the decisions in this case by the ALJ and Appeals Council judges, who derive their authority from Saul, constitutionally defective.

## V.    ANALYSIS

    1. <u>Whether the ALJ erred by failing to adequately develop the record to determine whether Plaintiff was unable to maintain employment for the relevant period</u>

Plaintiff claims that the ALJ failed to adequately develop the record to determine if the combination of treatment for both her cancer and knee replacement would have met the twelve-month duration requirement for a closed period of disability. (Rec. Doc. No. 12-1, p. 10-11). Plaintiff states that the record demonstrates that due to the combination of her treatment regimen and severe symptoms, she would be unable to sustain work from her onset date until the completion "of at least her knee replacement." *Id*. at 11. Specifically, Plaintiff contends that the ALJ never considered the time period between March 30, 2020 and May 13, 2020, because the record is void of evidence for a "three month time period," the "exact same time frame as the ALJ claimed that there was zero evidence to support a closed period of disability." *Id*. at 11-12.

The Commissioner contends that the ALJ properly considered the evidence as a whole

6

when he found Plaintiff was not disabled for a twelve-month period. (Rec. Doc. No. 17-1, p. 4).

Further, the Commissioner maintains that the record contained sufficient evidence for the ALJ to

make an informed decision. *Id*. at 7. The Commissioner notes that Plaintiff failed to provide any

additional evidence in seeking review of the ALJ's decision before the Appeals Council on April

6, 2020. *Id*. at 7-8. Finally, the Commissioner notes that the duty to obtain medical records belongs

to the Plaintiff, not the ALJ. *Id*. at 9. In summary, the Commissioner argues that the ALJ properly

found that Plaintiff failed to establish that she was disabled at any point or that her medical

condition established a period of disability, noting that there is no requirement that an individual

be fully healed from all procedures before being found able to engage in work activity, and that

not all pain and subjective symptoms are considered disabling under the Act. *Id*. at 10.

Under the Act, disability is defined as the "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).[1] Plaintiff argues the ALJ never adequately

developed the record to determine if the combination of the treatment for both her cancer and knee

replacement would have met the twelve-month duration requirement. (Rec. Doc. No. 12-1, p. 10).

An ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision

is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)

---

[1] Plaintiff cites to this exact statute for the incorrect proposition that an ALJ "must consider any road blocks that would impede a claimant's ability to sustain work on a regular basis which includes but not limited to symptoms, side effects from medications, mandatory appointments during regular hours 8-5, medical procedures, emergency room visits, and inpatient hospitalizations." (Rec. Doc. No. 12-1, p. 10). Plaintiff further provides that the ALJ must "consider whether a claimant can remain in the work force by being present at the job site…to meet their burden at step five." *Id*. However, the Court notes that this case was decided at Step 4. Importantly, under the first four steps of the analysis, the burden lies with the claimant to prove she has a disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies her initial burden, the burden shifts to the Commissioner at step five to show that the claimant can perform other gainful employment in the national economy. *Greenspan*, 38 F.3d at 236. *See also Strempel v. Astrue*, 299 Fed App'x 434, 437 (5th Cir. 2008) ("Throughout the process, the ultimate burden of establishing disability remains with the claimant.").

(citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). This duty is heightened when a claimant is not represented by counsel, in which case an ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id*. (quoting *Kane*, 731, F.2d at 1219-20). The decision of an ALJ will be reversed as not supported by substantial evidence if the Plaintiff shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the Plaintiff was prejudiced thereby. *Id*.

In *James v. Bowen*, the Fifth Circuit held that the ALJ satisfied the *heightened* duty owed to *unrepresented* claimants by questioning about his medical condition, asking about his ability to perform various tasks and daily activities, and inviting the claimant to include anything else in the record. *James v. Bowen*, 793 F.2d 702, 704-05 (5th Cir. 1986). Likewise, in *Carrier v. Sullivan*, the Fifth Circuit determined that the ALJ satisfied this *heightened* duty by questioning the *unrepresented* claimant about his medical condition, asking about the effectiveness of attempted treatments, and inquiring about how the claimant's daily routine had been affected. *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991). In *Brock v. Chater*, the Fifth Circuit determined that the ALJ satisfied his *heightened* duty by extensively questioning the claimant about his education, training, and past work history; about the circumstances of his injury; about his daily routine, pain, and physical limitations; as well as considering a medical report obtained by the claimant's treating physician. *Brock*, 84 F.3d at 728. Here, no heightened duty exists as Plaintiff was represented by counsel. Despite that, the ALJ questioned Ms. Payne-Dillon about her education, training, and past work history; medical condition and treatment; about her ability to perform various tasks and daily activities; and considered numerous medical reports from Plaintiff's treating oncologist, as well as from State Disability Determination Services. (*See* Rec. Doc. No. 10-2). Furthermore, the ALJ then allowed Plaintiff's counsel to question Plaintiff. *Id*. Thus, the ALJ has fulfilled his duty to

develop the record fully and fairly.

Furthermore, Plaintiff cannot show that she was prejudiced by any alleged failure to fully develop the record. The Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless Plaintiff can show that she was prejudiced by the ALJ's failure. To establish prejudice, a Plaintiff must show that she "could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). In *Brock*, the Fifth Circuit noted that the Plaintiff pointed to "no evidence that, had the ALJ developed the record further, would have been adduced at the hearing and that could have changed the result." *Brock*, 84 F.3d at 728-29. Likewise, here, Plaintiff does not offer any evidence that would have changed the outcome had the ALJ gone above and beyond to personally elicit further information from medical providers. Plaintiff sought review of the ALJ's decision to the Appeals Council on April 6, 2020, and provided no additional evidence at that time, squarely within the three-month period Plaintiff complains that the ALJ failed to address. (Rec. Doc. No. 17-1, p. 8, citing Tr. 172). The only reason provided to the Appeals Council for review was that the ALJ was unconstitutionally appointed. *Id*. (citing Tr. 5). Therefore, Plaintiff has also failed to show that she was prejudiced by any purported failure to fully develop the record.

Additionally, the regulations are clear that it is the burden of the Plaintiff—not the ALJ— to obtain medical records that belong to Plaintiff. *See Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof…"); *see also* 20 C.F.R. §§ 404.1512, 416.912; *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (holding that the claimant bears the burden of proof in establishing disability). Therefore, if Plaintiff had further evidence to support continued disability, Plaintiff should have provided that

information. The failure to bring any additional evidence to the Appeals Council suggests that Plaintiff does not have any information that would have altered the result. Further, Plaintiff does not point to any additional information in her memorandum before this Court that would alter the result.

Finally, the Court is persuaded that the ALJ clearly provided a specific rationale for denying any period of disability until May 2020 when he stated:

> However, it is pertinent to note that the claimant's breast cancer was already successfully treated through lumpectomy and chemotherapy (Exhibit 14F, pgs 29-30). Subsequent biopsy revealed the same with no evidence of malignancy involving the breasts, as well as the ovaries and fallopian tubes (Exhibit 16F, pgs 16, 18). Moreover, on February 9, 2020, the claimant presented for post-procedure follow-up and was noted to have been recovering well (Exhibit 16F, pg 39). Physical examination revealed no chest or breast tenderness with no evidence of cervical adenopathy or upper body adenopathy (Exhibits 16F, pgs 42-43). She was noted to have a benign clinical examination with surgical incisions healing well (Exhibit 16F, pg. 43).

(Rec. Doc. No. 10-2, p. 24). The ALJ further stated that:

> The undersigned further acknowledges that the claimant is currently preparing for and planning to undergo bilateral breast reconstruction surgery, although as of the date of the hearing the surgery had not been scheduled. However, given the claimant's generally good responses to lumpectomy, chemotherapy, and mastectomies (including oophorectomy and expander placement), all of which took place in less than 12 months, there is nothing to suggest that the claimant would not have a similarly good response to reconstruction. *More importantly, the claimant has offered no evidence to show that the future reconstructive surgery will result in increased functional limitations lasting for a requisite 12-month durational period.*

(Rec. Doc. No. 10-2, p. 24) (emphasis added). Furthermore, the ALJ made specific findings relevant to Plaintiff's knee:

> Additionally, as mentioned above, there is evidence as to a history of knee arthralgia, primarily involving the right knee, for which the claimant underwent right knee arthroscopy in November of 2018 (Exhibit 2F, pgs 13-16). However, the claimant made progress with formal therapy reaching full range of motion (Exhibit 2F, pg 4). She was ambulatory without particular discomfort or difficulty, and returned to full-time work (Exhibit 2F, pg 4). With the exception as to some right knee pain, effusion, and limited range of motion in December of 2019, the claimant has otherwise exhibited essentially normal physical exam findings (Exhibits 11F, pg 3; 14F, pgs 7, 20, 35-36, 59, 65-66, 83;

10

& 16F, pgs 8, 50). In December 2019, she was instructed to see how long the pain lasted before considering any future surgery and that any future surgery would likely be an arthroplasty (Exhibit 11F, pg 1). She was given a knee injection (Exhibit 11F, pg 5). Of note, later physical exam findings make no mention as to any observable knee related abnormalities (Exhibits 14F, pgs 7, 20 & 16F, pgs 8, 50). Moreover, the claimant did not initially allege disability in relation to knee issues and only made mention of such issues at hearing when addressed by the undersigned (Exhibits 2E, 6E, & 8E).

(Rec. Doc. No. 10-2, p. 25). While there may not be medical records for the brief period of March 30, 2020 through May 13, 2020, the evidence before the ALJ indicated that Plaintiff was successfully recovering and that any future knee surgery or extended side effects from treatment were purely speculative. It is clear from the record that the ALJ made an informed decision based on sufficient facts, thus, the ALJ adequately developed the record in determining that Plaintiff was not disabled for a twelve-month period.

2.   Whether the ALJ erred in evaluating the opinion evidence

Plaintiff states that the ALJ disregarded his duty and relied upon his own lay judgement to deny her DIB, thereby erring in evaluating the opinion evidence. (Rec. Doc. No. 12-1, p. 12). Plaintiff argues that the ALJ disregarded the opinion of her treating oncologist, Dr. Colfry, noting that his opinion was "incomplete." *Id*. Plaintiff states that if the ALJ had concerns regarding the treatment provided, he was "required to recontact" Dr. Colfry. [2] *Id*. at 15. Plaintiff further argues that the ALJ erred in finding that the opinion of Dr. Colfry was not persuasive, and that remand must occur because Dr. Colfry stated that the cancer treatment would continue until May 2020, which would create the requisite twelve-month period of disability. *Id*. at 21.

The Commissioner maintains that the ALJ properly considered the evidence as a whole,

---

[2] Plaintiff incorrectly asserts that SSR 85-16, 1985 WL 56855, at *3, requires the ALJ, once he determined that the opinion was missing information, to contact Dr. Colfrey to clarify his opinion. However, this regulation specifically refers to "Residual Functional Capacity for *Mental* Impairments," and Plaintiff does not claim to have any mental impairments. Therefore, this argument is without merit and will not be addressed within the body of this section.

including the opinion of Dr. Colfry that Plaintiff was not disabled for a twelve-month period. (Rec. Doc. No. 17-1, p. 4). The Commissioner contends that the regulations refer to *medical opinions*, and that Plaintiff has failed to point to any finding by Dr. Colfry that falls within the definition of a medical opinion. *Id*. at 5. Furthermore, the Commissioner notes that a statement by a medical source that a claimant is "disabled" or "unable to work" is properly rejected by an ALJ as determinative of the ultimate issue. *Id*. at 6.

The Social Security Administration recently revised the regulations concerning how the agency considers medical opinion evidence in disability determinations. For claims filed on or after March 27, 2017, as here, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (per curiam). Instead, the ALJ must consider each medical opinion or prior administrative finding in the record and evaluate its persuasiveness applying five factors: (1) supportability, (2) consistency, (3) relationship with the claimant including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of treatment relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *Id*. § 404.1520c(c).

An ALJ must articulate how he considered the supportability and consistency factors for a medical opinion or a prior administrative medical finding in his determination. *Id*. § 404.1520c(b)(2). However, the ALJ is not required to discuss how he considered the medical source's relationship with the claimant, specialization, or other factors in his determination. *Id*. When one medical source provides multiple opinions, the ALJ is not required to articulate how he

"considered all of the factors for all of the medical opinions," but instead should articulate how he

considered those opinions "together in a single analysis using the factors" listed above. *Id*. §

404.1520c(b)(1).

> On February 7, 2020, Dr. Colfry submitted the following statement on behalf of Plaintiff:

> Donnika Payne is a very pleasant 48 year old female who has been under my care for Stage 2A Invasive ductal carcinoma of the right breast since April 2019. She originally underwent surgical intervention on April 12, 2019 followed by a chemotherapeutic regimen that lasted from June 24, 2019 through December 10th, 2019.

> After diagnosis, it was discovered that Ms. Payne carries a genetic mutation predisposing her to breast and ovarian cancer, formally known as PALB2. The National Comprehensive Cancer Network guidelines strongly recommend all carriers of the PALB2 gene undergo risk reducing surgery. Because of this, it was my medical recommendation that Ms. Payne undergo an additional risk reducing surgery. On January 29, 2020, Ms. Payne underwent surgical intervention including a bilateral mastectomy, oophorectomy (removal of the ovaries), and expander-based breast reconstruction. The surgery lasted approximately 6 hours.

> Due to the involved surgical recover process, planned second stage breast surgery Mrs. Payne must still undergo, and the physical therapy required to ensure full recovery, I feel that it is medically necessary that Mrs. Payne remain out of work until May 13th, 2020.

(Rec. Doc. No. 10-15, p. 32). Notably, during the hearing, the ALJ and the attorney for Plaintiff

had the following exchange:

> ALJ: Right. But you're – so you're asking me – you're admitting nobody knows what's going to happen, but you're asking me to project into the future and assume – you're asking me to make a lot of assumptions.
> ATTY: Well, I would ask you to rely on the doctor. That's what I would ask – you to rely on her doctor.
> ALJ: I understand. The doctor's statement that he – what's – let me see – what does he actually say? "I feel that it's medically necessary for her to remain out of work until May 23, 2020." That's the statement you're talking about?
> ATTY: Yeah.
> ALJ: Okay.
> ATTY: And I think it's – I think what it is, is it's a conservative statement. It's not a – you know, he's not going out on a limb there.
> ALJ: And why did he pick that date? He doesn't explain. What's your understanding? Why did he choose that date?
> ATTY: Because I asked him because I knew the issue was the year, and –
> ALJ: Oh. So you asked him –

> ATTY: To tell us –
> ALJ: You gave him that date, May 23rd, 2020?
> ATTY: I asked him whether, in his opinion, she would be going back to work – well, see, my understanding of the law – maybe this is flawed…

(Rec. Doc. No. 10-2, p. 41). The ALJ then made the following findings regarding the February 7, 2020 statement by Dr. Colfry:

> As for the additional evidence, on February 7, 2020, Alfred Colfry III, MD, the claimant's oncologist, submitted a letter outlining the claimant's treatment course (Exhibit 15F). Dr. Colfry indicated that due to the involved surgical recovery process, planned second stage breast surgery that the claimant must still undergo, and the physical therapy required to ensure full recovery, he felt that it was medically necessary the claimant remain out of work until May 23, 2020 (Exhiibt 15F). Dr. Colfry offers a conclusory statement, which invades the exclusive authority of the Commissioner, and provides no vocationally relevant function-by-function assessment of abilities. Moreover, the claimant's representative admitted at hearing that she provided Dr. Colfry with the May 23, 2020 date. This statement is inherently neither valuable nor persuasive in accordance with 20 CFR 404.1520b(c) and 416.920b(c).

(Rec. Doc. No. 10-2, p. 25-26).

Plaintiff relies on the February 7, 2020 statement by Dr. Colfry to support a finding that she was disabled for more than twelve months with no definite date of an ability to return to work or that she had a closed period of disability for thirteen months. (*See* Rec. Doc. No. 12-1, p. 21). However, the regulations explain that "medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1). 416.927(a)(1). A medical assessment that diagnoses and observes a patient but does not opine on what the patient can do is not a "medical opinion." *See Winston v. Berryhill*, 755 Fed. App'x 395, 402-03 (5th Cir. 2018) (concluding that "a 'medical opinion' requires both an evaluation of symptoms and an expression of judgment regarding a claimant's capabilities and restrictions").

14

Dr. Colfry's statement simply outlines his diagnoses and observations, leaving other personnel to draw conclusions about the implications for Plaintiff's RFC. It does not opine on her work limitations, except a blanket statement that she will be unable to work until May. Therefore, it is not a medical opinion within the meaning of the Act. Furthermore, a statement by a medical source that a claimant is "disabled" or "unable to work" does not require the Commissioner to find that claimant disabled. *See, e.g., Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (holding that a physician's opinion that a claimant is "disabled" or "unable to work" is not the type of doctor's opinion that is given "special significance"); *Tamez v. Sullivan*, 888 F.2d 334, 336 n. 1 (5th Cir. 1989) (doctor's note that claimant was "disabled" did not mean that the claimant was disabled for purposes of the Act); *Barajas v. Heckler*, 738 F.2d 641, 645 (5th Cir. 1984) (a treating physician's statement that an individual is disabled does not mean that she is disabled within the meaning of the Act). Therefore, the ALJ did not violate any legal standards specific to medical opinions when he assessed the observations noted in Dr. Colfry's statement.

Plaintiff also indicates that her treating orthopedist opined that she would require a total knee replacement after her cancer treatment, further supporting a closed period of disability due to an inability to maintain employment for at least a twelve-month time frame. (Rec. Doc. No. 12-1, p. 19). She states in footnote twelve that the opinion concerning the knee surgery "will be addressed in further detail below," but fails to address it. *Id*. at fn. 12. However, as included above, the ALJ made specific findings relevant to the knee, noting that the Plaintiff had exhibited normal physical exam findings, that she was instructed in December of 2019 to see how long pain lasted before considering any future surgery, that later physical exam findings make no mention of any knee related abnormalities, and that Plaintiff did not initially allege disability in relation to knee issues and only made mention of such issues at the hearing when specifically addressed by the

15

ALJ. (Rec. Doc. No. 10-2, p. 25).

An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (holding that good cause exists for abandoning a treating physician's opinion where it is unsupported by the evidence). Furthermore, the Commissioner, not the courts, must resolve conflicts in the evidence, and if substantial evidence supports the decision, it must be affirmed even if there is evidence on the other side. *Lewis v. Commissioner of Social Security*, No. 20-345-EWD, 2021 WL 4142279, at *4 (M.D. La. Sept. 10, 2021); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). Accordingly, the ALJ did not err in evaluating the opinion evidence.

3. <u>Whether the ALJ committed reversible legal error by failing to account for all of the functional limitations stemming from Plaintiff's impairments in his RFC finding</u>

Plaintiff contends that the ALJ committed reversible legal error by failing to specify how many hours each day that Plaintiff could sit, carry, walk, and stand. (Rec. Doc. No. 12-1, p. 22). Plaintiff alleges that this was a "harmful legal error" because her severe medial meniscus tear/effusion in her right knee would "without a doubt have some affect [on her] ability to walk, stand, and carry." *Id*. Plaintiff contends that "[s]ince walking, carrying, and standing are integral components of light work, the ALJ's RFC finding is inherently defective." *Id*. at 23. Additionally, Plaintiff contends the ALJ erred in not incorporating unscheduled days off for at least a year in the RFC.[3] *Id*. Plaintiff states that the ALJ "volitionally designed his RFC finding based upon the State

---

[3] Plaintiff makes this claim based on the opinions of Dr. Colfry and her orthopedist in regard to her knee, and a potential future knee surgery. The ALJ properly discounted the statement by Dr. Colfry about Plaintiff remaining disabled until May 2020, as discussed in detail above. Further, an opinion about a *possible* surgery sometime in the future is not sufficient to establish any limitations, particularly here, where the ALJ noted that "later physical exam findings make no mention as to any observable knee related abnormalities" and that "physical exam findings have been grossly normal and fail to show evidence as to any significant gait or neurological deficits." (Rec. Doc. No. 10-2, p. 25). Thus, there is no merit to this argument that the ALJ erred in failing to incorporate unscheduled days off for an unscheduled surgery, and it will not be addressed in the body of this opinion.

16

Agency opinions that were authored well before 'adequate acceptable information' was added to the file," specifically referencing a CT scan illustrating back pathology. *Id*. at 24. Plaintiff concludes that this was harmful error because limiting Plaintiff to no bending; limited walking, sitting, and carrying; and sit/stand options would have prevented her from performing light work. *Id*. at 24-25. Finally, Plaintiff contends that the ALJ erred by not including in the RFC all functional limitations stemming from medication side effects. *Id*. at 25.

The Commissioner contends that substantial evidence supports the ALJ's RFC finding. (Rec. Doc. No. 17-1, p. 15). The Commissioner maintains that the RFC finding is consistent with the evidence of record and constitutes an appropriate resolution to any conflicts in the evidence. *Id*. at 16.

Here, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) "except she can occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; frequently stoop; and occasionally kneel, crouch and crawl." (Rec. Doc. No. 10-2, p. 22).

An RFC determination is the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. *Id.* at § 404.1545(a)(1-3). The relative weight given to the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). To that end, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported by the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam). Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are

generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

Before making an RFC determination, however, the ALJ must perform a function-by-function assessment of the claimant's capacity to perform sustained work-related physical and mental activities "based upon all of the relevant evidence" and taking into account "both exertional and nonexertional factors." *Myers v. Apfel,* 238 F.3d 617, 620 (5th Cir. 2001) (citing Security Ruling (SSR) 96–8P, 1996 WL 374184, at *3–6 (S.S.A. July 2, 1996)). Exertional factors involve seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-8P, 1996 WL 374184, at *5. "[W]ithout the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work" at step four or perform other "types of work" at step five. *Id*. at *3-4; *accord Myers,* 238 F.3d at 620. "When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *Id*. at *1. Importantly, even if the ALJ fails to conduct a function-by-function analysis, he satisfies this requirement if he bases his RFC assessment, at least in part, on a state medical examiner's report containing a function-by-function analysis. *Beck v. Barnhart,* 205 F. App'x 207, 213–14 (5th Cir. 2006) (per curiam); *Onishea v. Barnhart,* 116 Fed. App'x. 1 (5th Cir.2004) (per curiam).

Here, the ALJ did not conduct a function-by-function analysis of Plaintiff's physical work-related activities in accordance with SSR 96-8p. However, he based his determination, at least in part, on the medical reports from the State Agency medical consultants (SAMCs) employed by the State Disability Determination Services, which contained function-by-function analyses of the

18

impact of Plaintiff's impairments on her ability to perform work-related tasks. (Rec. Doc. No. 17-1, p. 13) (citing Tr. 24, 76-77, 94-95). The ALJ specifically stated:

> Overall, the evidence presented establishes the existence of impairments that appear to interfere with the claimant's functioning, but not to the extent that she is disabled. In light of the evidence above, the undersigned finds the residual functional capacity conclusions reached by the medical consultants employed by the State Disability Determination Services to be very persuasive (Exhibits 2A & 71). *The opinions for a light exertional level with limited postural activities are accepted and detailed in the above residual functional capacity.* These conclusions are from reviewing sources with program knowledge who gave detailed and rationale explanations as to the objective evidence relied upon in support of their opinions (Exhibits 2A & 7A). The opinions are consistent with the record of evidence at the time in which they were offered and are consistent with subsequently received evidence. As detailed above, the claimant's breast cancer has been successfully treated without evidence of recurrence or significant residual effects from chemotherapy (Exhibits 14F, pgs 29-30, 63 & 16F, pgs 16, 18). Moreover, physical exam findings have been grossly normal and fail to show evidence as to any significant gait or neurological deficits (Exhibits 11F, pg 3; 14F, pgs 7, 20, 35-36, 59, 65-66, 83; 14F, pgs 7, 20; & 16F, pgs 8, 50).

(Rec. Doc. No. 10-2, p. 25) (emphasis added).

The reports of the SAMCs, in addition to the testimony and medical evidence of record relied on by the ALJ in making the RFC determination "satisfy the function-by-function assessment requirement in SSR 96-8p." *McMillian v. Colvin*, No. 4:12-CV-661-A, 2014 WL 61172, at *10 (N.D. Tex. Jan. 6, 2014); *see also Beck*, 205 Fed. App'x at 213-14. Accordingly, because the ALJ relied in part on SAMC reports containing a function-by-function analysis, his RFC determination is supported by substantial evidence and satisfies the standards established by the Fifth Circuit.

Plaintiff contends that the SAMCs did not consider a CT scan that showed partial sacralization at L5 with substantial narrowing at the L5-S1 intervertebral disc space. (Rec. Doc. No. 12-1, p. 24). However, the ALJ specifically stated that "the medical evidence of record fails to show evidence as to any significant back related complaints or treatment, nor did the claimant allege any disabling back related conditions." (Rec. Doc. No. 10-2, p. 25). Plaintiff has not shown

that her physical condition subsequently deteriorated. The ALJ noted that Plaintiff's "physical exam findings have been grossly normal and fail to show evidence as to any significant gait or neurological deficits." *Id*. Furthermore, the ALJ provided for limitations in determining that she could only occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; frequently stoop; and occasionally kneel, crouch, and crawl. *Id*. at 22.

Plaintiff states that the ALJ failed to consider the effects of Arimidex, but Plaintiff does not reference any supporting medical documentation in the record of limitations due to medication. Furthermore, Plaintiff testified at the hearing that she was taking Adriamycin and Cytoxan during chemotherapy once a week every three weeks and that it caused joint pain, but that chemotherapy was over in August of 2019. (Rec. Doc. No. 10-2, p. 55). Further, when asked by the ALJ if she was in any discomfort *right now* at the February 2020 hearing because of her major surgeries, Plaintiff stated she experienced pain in her "chest area and [] stomach." *Id*. at 57. She did not indicate continuing joint pain, and the ALJ specifically addressed any residuals from chemotherapy in his opinion:

> The claimant testified that during chemotherapy, she experienced nausea, vomiting, finger pain, joint pain, and fatigue with her feeling very tired and that all she did was sleep. Yet, while it seems feasible that the claimant had some residual symptoms during the course of her chemotherapy treatment, the record does not show that they were to the degree or severity as alleged by the claimant. The records show that while the claimant was preemptively prescribed medications for nausea, there is no consistent or significant complaints of nausea throughout her course of treatment (Exhibit 14F). After completing her first course of chemotherapy in August 2019, which consisted of one treatment every three weeks, the claimant reported to her provider that she felt fatigued for three to four days following chemotherapy, but then otherwise generally felt well (Exhibit 14F, pg 63). The claimant denied neuropathy type symptoms, tingling, and numbness (Exhibits 12F, pgs 25, 37 & 14F, pgs 32, 58, 63, 83). *The treatment notes also fail to show any consistent complaints as to joint pain. In fact, outside of her indicating some arthralgias to the knees in November of 2019, for which she had a known history of knee arthritis, the claimant rather consistently denied joint pain, weakness, or myalgias* (Exhibits 14F, pgs 19, 32, 58, 65, 83 & 16F, pg 49). Similarly, with the exception as to some right knee pain, effusion, and limited range of motion in December of 2019, the claimant has otherwise exhibited normal physical exam findings (Exhibits 11F, pg 3; 14F, pgs 7, 20, 35-36, 59, 65-66, 83;

& 16F, pg 50). Moreover, the claimant indicated in her testimony that after moving in with her daughter and during the course of her cancer treatment, she was able to help her daughter out with chores and cooking. Additionally, the treatment notes in August 2019 and January 2020, after the completion of the first and second course of chemotherapy, also show the claimant to have denied activity change (Exhibits 14F, pg 57 & 16F, pg 49). *Lastly, the treatment notes fail to show any long lasting residuals from the chemotherapy and do not support the claimant's testimony as to continued chest or abdominal pain.*

(Rec. Doc. No. 10-2, pp. 23-24) (emphasis added). Thus, the ALJ properly found that the treatment notes failed to show any long-lasting residuals from chemotherapy, including the medication at issue, that purportedly created joint pain.

The ALJ's RFC decision can be supported by substantial evidence even if she does not specifically discuss all the evidence that supports her decision or all the evidence that she rejected. *Falco v. Shalala,* 27 F.3d 16, 164 (5th Cir.1994). A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Leggett,* 67 F.3d at 564. Furthermore, courts may not reweigh the evidence or substitute their judgment for that of the Commissioner, and a "no substantial evidence" finding is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence". *See Johnson v. Bowen,* 864 F.2d 340, 343 (5th Cir. 1988) (citations omitted). The ALJ retains the sole responsibility for determining a claimant's RFC. *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Thus, the Court finds that the ALJ did not fail to account for all of the functional limitations stemming from Plaintiff's impairments in his RFC finding, and the RFC determination is supported by substantial evidence.

4. <u>Whether the appointment of Andrew Saul violated separation of powers and rendered the decisions in this case by the ALJ and Appeals Council judges, who derive their authority from Saul, constitutionally defective</u>

Plaintiff contends that the appointment of Andrew Saul as a single commissioner of the

SSA who is removable only for cause and serves a longer term than that of the President violates the separations of powers, thus rendering the decision in this case by an ALJ and Appeals Council who derive their authority from Andrew Saul, constitutionally defective. (Rec. Doc. No. 12-1, p. 26). The Commissioner agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause but argues that this conclusion does not support setting aside an unfavorable SSA disability benefits determination.[4] (Rec. Doc. No. 17-1, p. 16). The Court therefore assumes, for purposes of this decision, that the removal provision as to the Commissioner is unconstitutional.

An unconstitutional removal provision does not automatically void every action of the agency. *See Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021); *see also Hughes v. Kijakazi*, Civ. A. No. 20-2374, 2022 WL 1256704, at *19 (E.D. La. Mar. 9, 2022) (dealing with the same exact issue of the constitutionality of decisions by the ALJ and Appeals Council under Andrew Saul). To undo an agency action, the plaintiff must show that the unconstitutional provision inflicted compensable harm. *Id*. In *Collins*, the United States Supreme Court provided some examples that would clearly meet this standard:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause for removal." Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way.

*Id*. In *Collins*, the plaintiffs sought to undo certain agency action on the basis that the unconstitutional removal provision applicable to the Director of the Federal Housing Finance Agency ("FHFA") had caused harm because in the absence of the provision, the President might

---

[4] The Commissioner further argues the harmless error doctrine, the *de facto* officer doctrine, and the rule of necessity in support of its opposition to this assignment of error. The Court need not address these alternative arguments, as the Court has determined remand is not appropriate on the basis of the removal provision alone.

have removed one of the Directors who implemented the challenged agency action or the Directors might have altered their behavior in a way that could have benefitted the plaintiffs. *Id*. The Court described the question of whether the unconstitutional provision had caused harm as "less clear-cut" and held that the lower courts should resolve the parties' arguments in the first instance. *Id*.

Courts applying the *Collins* standard to the Commissioner of the SSA in the context of an appeal of a denial of Social Security benefits have found no harm that can be linked to the unconstitutional removal provision. *See, e.g., Hughes*, 2022 WL 1256704, at *20; *Dondia M.L. v. Kijakazi*, No. 2:20-CV-06497-AFM, 2022 WL 60591, at *3 (C.D. Cal. Jan. 5, 2022) (Plaintiff identifies no particular harm suffered by virtue of her claim being adjudicated during Commissioner Saul's tenure by an ALJ who was otherwise properly appointed. She has failed to show any connection between the unconstitutional removal clause and ALJ Gunn's decision denying her benefits. Further, nothing in the record supports the conclusion that the disability decision is in anyway traceable to Commissioner Saul.); *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *7 (M.D. Pa. Dec. 31, 2021) ("Crossley cannot show how the inability to remove the Commissioner without cause might have affected any disability benefits decision, much less the decision on his specific claim."); *Carolyn M.D. v. Kijakazi*, No. 2:20-CV-06725-AFM, 2021 WL 6135322, at *12 (C.D. Cal. Dec. 28, 2021) ("Plaintiff has failed to show any connection between the unconstitutional removal clause and ALJ Carberry's decision denying her benefits. She identities no particular harm suffered by virtue of her claim being adjudicated during Commissioner Saul's tenure by an ALJ who was otherwise properly appointed. Further, nothing in the record supports the conclusion that the disability decision in Plaintiff's case is in anyway traceable to Commissioner Saul. Accordingly, Plaintiff cannot rely upon the unconstitutional removal clause as a basis for obtaining a new hearing."); *Tibbetts v. Comm'r of Soc. Sec.*, No.

2:20-CV-872-SPC-MRM, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021), report and recommendation adopted, No. 2:20-CV-872-SPC-MRM, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022) ("The undersigned has not found any evidence suggesting that there is a connection between the removal provision and any possible harm to Plaintiff."). These courts have required the claimant to show some connection between the unconstitutional removal clause and the decision denying benefits. *Id*.

Here, Plaintiff has not made and cannot make a showing that the removal restriction caused compensable harm, or even demonstrate a connection between the removal provision and the adverse disability decision. At most, Plaintiff argues that the ALJ who adjudicated her claim and the Appeals Council members who considered her request for review served under authority delegated from a Commissioner who enjoyed unconstitutional removal protection, and thus, the denial of her claim *ipso facto* violates the separation of powers. This is incorrect based on the Supreme Court's recent ruling in *Collins*, clarifying that actions taken by properly appointed official are not necessarily void. *Collins*, 141 S.Ct. at 1788. Regardless of restrictions on removal, the properly appointed Commissioner had full authority to carry out the responsibilities of his office, including promulgating regulations and delegating authority pursuant to the Act. While Plaintiff suggests that actions taken by the Commissioner and those under his leadership are void or invalid due to the unconstitutional removal provisions, "*Collins* expressly rejects this view." *Boger v. Kijakazi*, No. 1:20-cv-00331, 2021 WL 5023141, at *3 (W.D.N.C. Oct. 29, 2021).

Furthermore, as noted by the Commissioner, the ALJ who decided this case was appointed by an acting Commissioner not subject to a removal provision, thereby removing the constitutional defect allegedly in play. Finally, the existence of an unconstitutional removal provision as to the head of an agency does not render the official impotent as would be the case with an

unconstitutional appointment. *Collins*, 141 S. Ct. at 1787 (making clear that an unconstitutional *removal* provision is not the same as an unconstitutional *appointment* provision and holding that the unconstitutional removal provisions did not render actions taken by the FHFA void). To obtain relief, Plaintiff cannot rely on the removal provision alone: she must show that the removal provision harmed her. *Id*. at 1788-89. Quite simply, the fact than an ALJ or the Appeals Council received their authority from the Commissioner is not enough. Having found that Plaintiff has not established a connection between the unconstitutional provision and the adverse disability decision, the Court finds that remand is not appropriate on the basis of the removal provision.

## VI.    CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 29th day of June, 2022.

_____

**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**