UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**DONNIKA PAYNE-DILLON**                                   **CIVIL ACTION**

**VERSUS**                                                 **NO. 21-532**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY ADMINISTRATION**                         **SECTION: "B" (3)**

## ORDER AND REASONS

Based upon reviews of the administrative record, applicable law, parties cross-motions for summary judgment and the Report and Recommendation of the Magistrate Judge (Rec. Doc. 18) to deny petitioner's motion for summary judgment (Rec. Doc. 12), grant respondent's motion for summary judgment (Rec. Doc. 17, and consideration of petitioner's objections (Rec. Doc. 19), and for reasons that follow,

**IT IS ORDERED** that petitioner's objections are **OVERRULED;** and

**IT IS FURTHER ORDERED** that the Magistrate Judge's Report and Recommendation are **ADOPTED** as the opinion of the Court, **DISMISSING** the petition for review under 42 U. S. C. §405.

In March of 2019, petitioner Ms. Donnika Payne-Dillon ("Petitioner or Ms. Dillon") was diagnosed with right breast invasive ductal carcinoma. Tr. 327. On May 15, 2019, Ms. Dillon underwent a lumpectomy. Tr. 262. She has also suffered from a complex tear of the medial meniscus along with joint effusion of her right knee (requiring partial knee replacement), an L5 partial sacralization with substantial narrowing at L5-S1 and articulation with the lateral masses of L5 with S1 joint, a post-breast cancer bilateral mastectomy and oophorectomy, and the

1

implantation of breast expanders. (Tr. 19-20, 22, 24). Her past relevant work was as a medical assistant, pharmacy technician, and unit clerk. Tr. 25.

On May 21, 2019, Ms. Dillon filed a Title II application for DIB and Title XVI application for SSI, alleging disability beginning May 13, 2019, due to breast cancer status-post bilateral mastectomy, oophorectomy, implantation of breast expander, and chemotherapy; degenerative joint disease of the right knee; and degenerative changes in lumbosacral spine. Rec. Doc. No. 10-2, p. 21.

Her claim was initially denied on June 28, 2019, and again upon reconsideration on August 19, 2019. Id. at 18. Petitioner requested a hearing, which was held on February 21, 2020, before an administrative law judge ("ALJ"). Id. The ALJ issued an unfavorable decision finding that she had not been under a disability from May 13, 2019 through April 6, 2020, the date of the decision. Id. at 27.

The ALJ analyzed the claim pursuant to the five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4)(i)-(v). At the first step, the ALJ found that the petitioner had not engaged in substantial gainful activity since May 13, 2019, her alleged onset date. Rec. Doc. No. 10-2, p. 20. At the second step, the ALJ found the following severe impairments: breast cancer status-post bilateral mastectomy, oophorectomy, implantation of breast expander, and chemotherapy; degenerative joint disease of the right knee; and degenerative changes in lumbosacral spine. Id. at 20-21. At the third step, the ALJ found that petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Id. at 21.

Regarding the fourth step, the ALJ found that petitioner had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except "she

can occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; frequently stoop; and occasionally kneel, crouch, and crawl." Rec. Doc. No. 10-2, p. 22. The case was decided here at step four, when the ALJ determined that petitioner was capable of performing past relevant work as a medical assistant, unit clerk, and pharmacy technician, as the work "does not require the performance of work-related activities precluded by [petitioner's] residual functional capacity." Id. at 26. Accordingly, the ALJ found that petitioner was not under a "disability" as defined in the Act from May 13, 2019 through April 6, 2020. Id. at 27.

On January 19, 2021, the Appeals Council denied petitioner's request to review the ALJ's decision, making the ALJ's unfavorable decision the Commissioner's final decision. Rec. Doc. No. 10-2, p. 2. Petitioner filed the present action to challenge that decision pursuant to 42 U.S.C. § 405(g).

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits.[1] *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). This duty is heightened when a claimant is not represented by counsel, in which case an ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Kane*, 731 F.2d at 1219-20). If this duty is not satisfied, the decision that results is not supported by substantial evidence. *See Ripley*, 67 F.3d at 557 (citing *Pierre*, 884 F.2d at 802 (5th Cir. 1989) (per curiam); *Kane*, 731 F.2d at 1219). Regardless of the level of duty, the decision of an ALJ will be reversed as not supported by substantial evidence if the petitioner shows (1) that the ALJ failed to fulfill his duty to adequately

---

[1] Under the Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

develop the record, and (2) that the petitioner was prejudiced thereby. *See id.* To establish prejudice, a petitioner must show that she "could and would have adduced evidence that might have altered the result." Kane, 731 F.2d at 1220.

The ALJ fulfilled his duty to fully and fairly develop the facts relating to the claim for disability benefits. Generally, the ALJ satisfies the heightened duty owed to unrepresented claimants by considering a medical report obtained by the claimant's treating physician and questioning them about their education, training, past work history, the circumstances of their injury, as well as their daily routine, their ability to perform that routine, pain, physical limitations, medical condition, the effectiveness of attempted treatments, and finally, inviting the claimant to include anything else in the record. *James v. Bowen*, 793 F.2d 702, 704-05 (5th Cir. 1986); *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991); Brock, 84 F.3d at 728.

Here, no heightened duty existed as petitioner was represented by counsel, but even if she was not represented by counsel, the ALJ fulfilled the heightened duty. The ALJ questioned Ms. Dillon about her education, training, and past work history; medical condition and treatment; and about her ability to perform various tasks and daily activities. See Rec. Doc. No. 10-2. The ALJ also considered numerous medical reports from petitioner's treating oncologist, as well as from State Disability Determination Services. Id. Furthermore, the ALJ then allowed Plaintiff's counsel to question Plaintiff. *Id.* Thus, the ALJ fulfilled his duty to develop the record fully and fairly.

Further, it is the petitioner's burden, not the ALJ's, to obtain medical records that belong to represented petitioner. *See Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof…"); *see also* 20 C.F.R. §§ 404.1512, 416.912; *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (holding that the claimant bears

4

the burden of proof in establishing disability). Therefore, if petitioner had medical records, or other evidence, to support her disability claim, it was her duty to provide that information.

Even if the ALJ failed to fulfill his duty to adequately develop the record, petitioner has not shown that she was prejudiced by this alleged failure. A court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless petitioner can show prejudice by the ALJ's failure. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). To establish this prejudice, a petitioner must show that she "could and would have adduced evidence that might have altered the result." *Kane*, 731 F.2d at 1220.

Here, there has not been an offer of any evidence that would have changed the outcome had the ALJ gone above and beyond to personally elicit further information from medical providers. Petitioner sought review of the ALJ's decision to the Appeals Council on April 6, 2020, and provided no additional evidence at that time, squarely within the three-month period she complains that the ALJ failed to address. Rec. Doc. No. 17-1, p. 8 (citing Tr. 172). Therefore, petitioner has also failed to show that she was prejudiced by any purported failure to fully develop the record.

Contrary to petitioner's objections, the record shows the ALJ did consider petitioner's testimony of her pain and disability in his residual functional capacity (RFC) determination. An RFC determination is the most an individual can still do despite his/her limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. Id. at § 404.1545(a)(1-3). The relative weight given to the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). To that end, the ALJ is not required to incorporate

limitations in the RFC that he did not find to be supported by the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

In considering petitioner's testimony of her pain and disability in his RFC determination, the ALJ was not required to incorporate her alleged limitations in the RFC because the ALJ did not find the testimony to be supported by the record. *See Morris*, 864 F.2d at 336. At the hearing, Ms. Dillon testified that as of February 21, 2020, she presently was suffering from: (1) pain in her joints (a byproduct of her chemotherapy), (2) pain in her stomach and chest (byproducts of her surgeries), (3) daily fatigue requiring her to lie down and rest (byproduct of her chemotherapy), and (4) inability to perform her activities of daily living (byproduct of her chemotherapy). Tr. 55-58. However, petitioner's testimony was not found to be supported by the objective medical evidence in the record.

Regarding joint pain, treatment notes failed to show any consistent complaints as to joint pain. In fact, outside of her indicating some arthralgias to the knees in November of 2019, for which she had a known history of knee arthritis, petitioner consistently denied joint pain, weakness, or myalgias. Exhibits 14F, pgs. 19, 32, 58, 65, 83 & 16F, p. 49. When asked by the ALJ if she was in any discomfort right now at the February 2020 hearing, petitioner stated she experienced pain in her "chest area and [] stomach," but did not indicate continuing joint pain. Rec. Doc. No. 10-2, p. 57. The ALJ specifically addressed how the treatment notes failed to show any consistent complaints of joint pain. Id. at 24-26.

Concerning stomach and chest pain, treatment notes failed to show any long-lasting residuals from chemotherapy and do not support petitioner's contention of continued chest or stomach pain. Id. at 24. The records show that while she was preemptively prescribed medications for nausea, there was no consistent or significant complaints of nausea throughout her course of

treatment. Exhibit 14F. Moreover, on February 9, 2020, the claimant presented for post-procedure follow-up and was noted to have been recovering well. Exhibit 16F, p. 39. A physical examination revealed no chest or breast tenderness with no evidence of cervical adenopathy or upper body adenopathy. Exhibits 16F, pgs. 42-43. She was noted to have a benign clinical examination with surgical incisions healing well. Exhibit 16F, p. 43.

With respect to petitioner's testimony on fatigue and inability to perform her activities of daily living, the record does not support these limitations. Rec. Doc. No. 10-2, p. 23-24. The record shows that after completing her first course of chemotherapy in August 2019, which consisted of one treatment every three weeks, she reported to her provider feeling fatigued for three to four days following chemotherapy, but then otherwise generally felt well. Exhibit 14F, p. 63. Treatment notes in August 2019 and January 2020, after the completion of the first and second course of chemotherapy, show that petitioner denied activity change. Exhibits 14F, p. 57 & 16F, p. 49. Moreover, in her testimony, Ms. Dillon discussed how she was able to help her daughter out with chores. Rec. Doc. No. 10-2, p. 23. Therefore, the ALJ was not required to incorporate petitioner's limitations because her testimony was inconsistent with the objective medical records.

Finally, petitioner erroneously argues that the ALJ's RFC analysis failed to indicate the credibility choices made regarding her complaints of pain, and the basis for those choices, which requires reversal and remand. An RFC assessment must include a narrative discussion describing how the evidence supports each conclusion and "a resolution of any inconsistencies in the evidence." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam) (citation omitted). "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767,

790 (W.D. Tex. 2012) (citing *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (internal quotation omitted)).

Here, the ALJ properly discussed the evidence in the record in making his RFC determination, explained the reasoning for the determination, and exercised his responsibility as factfinder in weighing the evidence and choosing to incorporate limitations into the RFC assessment that were most supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Because substantial evidence supports the ALJ's evaluation, remand is not appropriate. *See Smith v. Colvin*, No. 3:15–CV–02964–BH, 2016 WL 5086073, at *11 (N.D. Tex. Sept. 19, 2016) ("A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record."). Courts must "give great deference to the ALJ's residual functional capacity determination because it is 'precisely the kind of determination that the ALJ is best positioned to make.'" *Jacquez v. Colvin*, No. 3:12–CV–00370–ATB, 2013 WL 5522661, at *8 (W.D. Tex. Oct. 2, 2013) (quoting *Falco v. Shalala,* 27 F.3d 160, 164 (5th Cir. 1994)).

The ALJ discussed at length the medical evidence concerning petitioner's impairments. Tr. 15–20. The ALJ ultimately found that Ms. Dillon had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), within applicable parameters. Rec. Doc. No. 10-2, p. 232. The ALJ specifically considered impairments of joint pain, chest and stomach pain, nausea, vomiting, and fatigue. Id. at 23-26. The ALJ supported his RFC determination with a four-page discussion where he extensively cited the record. In doing so, the ALJ referenced petitioner's testimony, medical records, treatment notes, physical examination findings, and the RFC conclusions reached by the medical consultants employed by the State Disability Determination Services. *Id.*

The ALJ also reasonably discredited testimony because it was found to be inconsistent with the objective medical evidence. An ALJ's assessment of a claimant's credibility is accorded great deference. 42 U.S.C. § 423(d)(1)(A). Where there are inconsistencies between the claimant's alleged limitations and the evidence as a whole, an ALJ may reasonably discredit the testimony. *See, e.g., Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Anthony v. Sullivan*, 954 F.2d 289, 295–96 (5th Cir. 1992). As noted *supra*, there is ample medical evidence in the record inconsistent with petitioner's testimony. In sum, the ALJ did not fail to consider petitioner's testimony or discuss the credibility choices made regarding that testimony – his determination that the objective medical evidence was more persuasive was done within reasonable limits.

New Orleans, Louisiana this 9th day of September 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE